UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CHARLES B. THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:10-cv-04035 |
| | ) |
| DEERE & CO., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE*

Plaintiff, Charles B. Thompson, by and through his attorneys, Katz, Huntoon & Fieweger, P.C., states as follows for his Memorandum of Law in Support of his Motion *in Limine*:

### LATE-DISCLOSED WITNESSES/OPINIONS

In paragraph 4 of his Motion *in limine*, Plaintiff moves to bar Danielle Harvey, the Industrial Relations Coordinator at McLaughlin Body Company in Moline, because Deere failed to disclose her within the discovery deadline. As detailed in the Motion, the discovery deadline was July 15, 2011 and Deere disclosed Ms. Harvey for the very first time on July 19, 2011.

In paragraph 9 of his Motion *in limine*, Plaintiff moves to bar certain documents relied upon by Deere's expert, Heidi Schultz. While Deere did timely disclose Heidi Schultz as its vocational expert, it failed to timely disclose her opinions contained in a set of documents labeled "Schultz 146-194," disclosing the for the first time on September 9, 2011. This was almost two months after the close of discovery. Deere never filed a motion with the court to request leave to supplement discovery late.

Accordingly, plaintiff moves this court to bar Danielle Harvey entirely for defendant's untimely disclosure of her, and further moves the court to bar Schultz documents 146-194 and any testimony from Ms. Schultz or opinions based thereon upon such documents.

In support, see <u>Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.</u>, 533 F.3d 555 (7th Cir. 2008):

> Because Titan failed to disclose Taylor as an expert witness prior to the disclosure deadline, the district court did not abuse its discretion when it excluded his testimony. See <u>Salgado v. Gen. Motors Corp.</u>, 150 F.3d 735, 743 (7th Cir. 1998) (holding that "the district court acted well within its discretion when it imposed the sanction of excluding the testimony of the expert witness" because the party had failed to comply with the court's scheduling order); <u>Hill v. Porter Mem. Hosp.</u>, 90 F.3d 220, 224 (7th Cir. 1996) (noting that "[w]hen one party fails to comply with a court's pre-hearing order without justifiable excuse, thus frustrating the purposes of the pre-hearing order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction").

See also <u>Sys. Dev. Integration, LLC v. Computer Scis. Corp.</u>, 2012 U.S. Dist. LEXIS 100719, ** 6-9 (N.D. Ill. July 19, 2012):

> Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(a)(1) requires parties to disclose, among other things, "the name . . . of each individual likely to have discoverable information-along with the subjects of that information-that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A). Pursuant to Rule 26(e)(1)(A), "a party who has made a disclosure under Rule 26(a)-or who has responded to an interrogatory, request for production, or request for admission-must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e)(1)(A).
>
> CSC contends that its late disclosure of witnesses and documents complies with its obligation to supplement under Rule 26(e), but CSC is mistaken. Rule 26(e) requires a party to timely supplement its initial disclosures and discovery responses when it learns of new information or information that renders an earlier response inaccurate. Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). It does not, as CSC suggests, allow a party to wait until more than two years after the close of discovery, and after the Court has ruled on summary judgment, to supplement its discovery responses and initial disclosures as trial is approaching. See <u>Civix-DDI, LLC v. Hotels.com, L.P.</u>, No. 05 C 6869, 2011 U.S. Dist.

LEXIS 4947, 2011 WL 181342, at *3 (N.D. Ill. Jan. 19, 2011) (holding that the defendants' disclosure of new facts ten months after the close of discovery was untimely).

Having determined that CSC's late disclosures and document production do not comply with its obligations under Rule 26(e), the question becomes whether, pursuant to Rule 37(c)(1), CSC's failure to comply is "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). Exclusion of the untimely-disclosed evidence is automatic unless CSC can meet its burden to show that the untimely disclosure was substantially justified or harmless. Tribble v. Evangelides, 670 F.3d 753, 759 (7th Cir. 2012) ("Under Rule 37(c)(1), 'exclusion of non-disclosed evidence is automatic and mandatory . . . unless non-disclosure was justified or harmless.'") (quoting Musser v. Gentiva Health Servs., 356 F.3d 751, 758 (7th Cir. 2004)); David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003) ("the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified for harmless"). District courts have broad discretion to determine whether CSC's failure to comply with Rule 26(e) is substantially justified or harmless. Keach v. U.S. Trust Co., 419 F.3d 626, 640 (7th Cir. 2005); David, 324 F.3d at 857. The Seventh Circuit has indicated that the following factors are relevant to a court's determination:

(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. Tribble, 670 F.3d at 759 (citing David, 324 F.3d at 857).

CSC has not demonstrated that its untimely disclosure was justified. Although CSC generally asserts that the newly-disclosed information "came into existence only after the April 16, 2010 discovery cutoff" (CSC's Resp. at 1), it does not provide any detail regarding when it learned of the new information.

In this case Deere & Company cannot demonstrate that its failure to timely disclose Ms. Harvey as a witness or Ms. Schultz's report prior to the July 15, 2011 discovery deadline was either substantially justified or harmless.

As concluded in Sys. Dev. Integration, LLC v. Computer Scis. Corp., 2012 U.S. Dist. LEXIS 100719 (N.D. Ill. July 19, 2012):

Altering the financial information on which SDI's expert's opinions rest at this late stage in the litigation would undoubtedly prejudice SDI. See Civix-DDI, 2011 U.S. Dist. LEXIS 4947, 2011 WL 181342, at *4 (concluding that the defendant's untimely disclosure of evidence ten months after the close of discovery and after the parties had exchanged expert reports was prejudicial to the plaintiff).

3

Likewise, here, allowing Deere to add these new documents and new bases for opinions from Ms. Schultz two months after the discovery deadline is clearly prejudicial to plaintiff. These records attempt to quantify the amount of earnings and benefits plaintiff would have earned since termination if he had applied for local welder jobs, in support of defendant's failure to mitigate affirmative defense. The failure to disclose such opinions prior to the close of discovery prevented plaintiff from being able to rebut any of the claims made by Ms. Schultz.

Finally, see Hard Surface Solutions, Inc. v. Sherwin-Williams Co., 271 F.R.D. 612, 615 (N.D. Ill. 2010), collecting cases:

> Time and again the Seventh Circuit has emphasized that "[i]gnoring deadlines is the surest way to lose a case. Time limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations. Extended disregard of time limits (even the non-jurisdictional kind) is ruinous. 'Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won." ' United States v. Golden Elevator, Inc., 27 F.3d 301, 302 (7th Cir.1994)(parenthesis in original). In some contexts, a district court has the discretion to conclude that even a day's delay ought not be excused. Reales v. Consolidated Rail Corp., 84 F.3d 993, 996 (7th Cir.1996). Raymond v. Ameritech Corp., 442 F.3d 600, 606 (7th Cir.2006)("'We live in a world of deadlines.... The practice of law is no exception. A good judge has a right to assume that deadlines will be honored.'"); Harris v. Owens-Corning Fiberglas Corp., 102 F.3d 1429, 1433 (7th Cir.1996).
>
> Adherence to deadlines for disclosure of expert witnesses and their reports under Rule 26(a)(2) is not an exception to these principles. Recognizing that courts must have the authority to enforce discovery deadlines, numerous cases have approved exclusion orders by district courts where expert reports were not provided in a timely way. See, e.g., Scaggs v. Consolidated Rail Corp., 6 F.3d 1290, 1295-96 (7th Cir.1993); Smith v. Union Pacific R. Co., 168 F.R.D. 626, 629 (N.D.Ill.1996); Finwall v. City of Chicago, 239 F.R.D. 494 (N.D.Ill. 2006), objections overruled, Finwall v. City of Chicago, 239 F.R.D. 504 (N.D.Ill. 2006)(Manning, J.)(sustaining order excluding plaintiff's experts as a sanction for late and noncompliance with Rule 26).

With no demonstrated justification, plaintiff asserts that it is mandatory that the court bar Ms. Harvey from testifying and bar Deere from presenting in Ms. Schultz's testimony, any reference to Schultz documents 146-194 and any testimony and opinions based thereon based upon the above cited authority.

## **PLAINTIFF'S RELIGIOUS BELIEFS**

As a secondary ground for barring Deere from calling Ms. Harvey, in addition to the fact that she was not timely disclosed, in paragraph 6 of his Motion *in limine*, Plaintiff moves to bar any reference to potential employment at McLaughlin Body; plaintiff felt compelled not to pursue an opening with McLaughlin because it conflicted with his religious beliefs.

Opening the door to evidence regarding plaintiff's decision not to accept employment at McLaughlin Body Company would open this trial to a mini-trial on the issues of plaintiff's religious beliefs. Specifically, plaintiff testified in his deposition at p. 266 that the reason he did not accept the position at McLaughlin Body Company is that he learned the welding position was for a "military truck of some sort," and this was "contrary to my religious beliefs." Specifically, plaintiff is a Jehovah's Witness.

Plaintiff must also move this court to bar admission of Deere Exhibits 71-73, the McLaughlin Body Collective Bargaining Agreements and Wage Summaries. (See paragraph 7 of motion *in limine*.)

In support, under Federal Rule of Evidence 403, making this trial a mini-trial on the mitigation issue regarding plaintiff's decision to forego employment with McLaughlin would create a mini-trial regarding plaintiff's religious beliefs that would clearly confuse the jury, and the probative value of which is substantially outweighed by the danger of unfair prejudice. In support, see <u>EEOC v. Aldi, Inc.</u>, 2008 U.S. Dist. LEXIS 105417, 2-3 (W.D. Pa. Dec. 31, 2008):

> Plaintiffs argue that Defendant should be prohibited from introducing evidence of whether the Bible requires abstinence from work on Sundays on the basis that it is irrelevant and that any probative value is substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403. (Docket No. 83 at 3). Defendant counters that it must be allowed to introduce such evidence as it goes directly to whether Plaintiff Bloom sincerely believes that the Bible precludes work on Sundays. (Docket No. 120 at 3).

>Allowing Defendant to introduce specific Bible passages related to work on Sunday and questioning Plaintiff Bloom as to her interpretation of those passages would introduce in this trial issues that are the purview of religious scholars, not jurors, and any such inquiry would undoubtedly confuse the jury. FED. R. EVID. 403. The Court is also mindful of the Supreme Court's dictate in the First Amendment context that courts should not undertake to dissect religious beliefs. Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 715, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981). Accordingly, the Court finds that this potential line of inquiry has minimum probative value, and that any value it may have is substantially outweighed by the danger of unfair prejudice and could create an unfair advantage for Defendant. See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343 (3d Cir. 2002).

Like plaintiff here, the plaintiff in Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707 (U.S. 1981) was a Jehovah's Witness who believed working directly on an armament or weapon violated his scriptural beliefs:

>Thomas, a Jehovah's Witness, was hired initially to work in the roll foundry at Blaw-Knox. The function of that department was to fabricate sheet steel for a variety of industrial uses. On his application form, he listed his membership in the Jehovah's Witnesses, and noted that his hobbies were Bible study and Bible reading. However, he placed no conditions on his employment; and he did not describe his religious tenets in any detail on the form.
>
>Approximately a year later, the roll foundry closed, and Blaw-Knox transferred Thomas to a department that fabricated turrets for military tanks. On his first day at this new job, Thomas realized that the work he was doing was weapons related. He checked the bulletin board where in-plant openings were listed, and discovered that all of the remaining departments at Blaw-Knox were engaged directly in the production of weapons. Since no transfer to another department would resolve his problem, he asked for a layoff. When that request was denied, he quit, asserting that he could not work on weapons without violating the principles of his religion. The record does not show that he was offered any nonweapons work by his employer, or that any such work was available. (Thomas, 450 U.S. at 710.)

As explicitly recognized by the Supreme Court in Thomas, 450 U.S. at 715-716:

>The Indiana court also appears to have given significant weight to the fact that another Jehovah's Witness had no scruples about working on tank turrets; for that other Witness, at least, such work was "scripturally" acceptable. Intrafaith differences of that kind are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences in relation to the Religion Clauses. One can, of course, imagine an asserted claim so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause; but that is not the case here, and the guarantee of free exercise is not limited to beliefs which are

6

shared by all of the members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.

Obviously, the United States Supreme Court itself has wrestled with the issue of a Jehovah's Witness decision to forego employment where there is no choice other than to work on a military vehicle and/or item of weaponry. It should not be for this court in the Central District of Illinois to test Charles Thompson's constitutional right to hold to his religious beliefs, and this courtroom is no place to test those beliefs without hopelessly confusing this jury and/or creating a trial on an issue fraught with danger of unfair prejudice under Federal Rule of Evidence 403.

### REFERENCE TO AN ALLEGED PERSONAL RELATIONSHIP BETWEEN PLAINTIFF AND ONE OF THE WITNESSES IN THIS CASE

In support of plaintiff's Motion *in limine* paragraph 10, which asks this court to bar any reference to an alleged personal and/or intimate relationship between plaintiff and his former co-worker and one of the witnesses in this case, Audra McKeag, under Rule 403, any alleged probative value would be substantially outweighed by the danger of unfair prejudice and confusion of issues. Plaintiff strongly denies that any such relationship occurred, and obviously allowing defendant's counsel or witnesses even to allude to any such relationship would be highly prejudicial to plaintiff and/or this witness.

See United States v. Harris, 542 F.2d 1283, 1302 (7th Cir. 1976): "We do not find that a sexual relationship will *per se* give rise to bias, either favorable or unfavorable. The trial court did not commit error by refusing to allow counsel for defendant Davidson to cross-examine Lois Brown regarding her sexual relationships or other societally undesirable characteristics."

See also Medley v. Turner, 1995 U.S. Dist. LEXIS 6453, 9-10 (N.D. Ill. May 10, 1995):

7

> … the following motions in limine of the plaintiff are granted because the Court has concluded that the evidence excluded is of little or no probative value and that what little probative value there is, is substantially outweighed by the dangers of undue prejudice and jury confusion (Fed. R. Evid. 403):
>
> …
>
> 5. Defendants will be barred from introducing any testimonial or documentary evidence, questioning any witnesses or making any references to whether or not witnesses have had intimate relationships with the plaintiff (Plaintiff's Motion No. 5)

At very least, defendant should be precluded from making any such reference "before the jury to any alleged intimate relationship **without first making a proffer to the court** of the alleged admissible evidence of such intimate relationship," and should further be barred unless it presents "admissible evidence of the relationship, i.e., evidence that is not hearsay."  See <u>Shea v. Galaxie Lumber & Constr. Co.,</u> 1996 U.S. Dist. LEXIS 2904, 1-2 (N.D. Ill. Mar. 12, 1996) (reversed on other grounds at 152 F.3d 729 (7th Cir. 1998)):

> The Defendant has filed three motions in limine which are fully briefed. The subject matter of the motions are (1) an attempt to exclude evidence of an alleged intimate relationship between one Dina Bell and Steven Pinsler, Bruce Pinsler, or some other responsible person of the Defendant; …
>
> 1. THE ALLEGED INTIMATE RELATIONSHIP
>
> Plaintiffs object to the first motion contending that evidence of an intimate relationship is relevant on the issue of bias or prejudice of the witness. Plaintiffs are correct. The motion will be granted unless the Defendant calls Dina Bell as a witness and only if the Plaintiffs have admissible evidence of the relationship, i.e., evidence that is not hearsay. The Plaintiff is not to refer before the jury to any alleged intimate relationship without first making a proffer to the court of the alleged admissible evidence of such intimate relationship.

Here, however, since the defendant has failed to disclose any witnesses who have personal knowledge of facts which would prove the alleged relationship, the better approach is to bar such testimony.

8

### PERFORMANCE IMPROVEMENT PLAN FROM PLAINTIFF'S PRIOR EMPLOYER

In support of plaintiff's Motion *in limine* paragraph 12, which asks this court to bar admission of or reference to Thompson Deposition Exhibit 1, which is a July 10, 2000 Performance Improvement Plan from plaintiff's employer **prior** to Deere, MidAmerican Energy because any such evidence is not relevant pursuant to Rules 401-402, see EEOC v. Wal-Mart Stores, Inc., 2000 U.S. Dist. LEXIS 13342 (S.D. Ill. Mar. 10, 2000):

> The EEOC moves to bar Wal-Mart from introducing evidence about Tammy Williams' performance with and/or termination by prior or subsequent employers. The EEOC argues that this evidence is irrelevant and unfairly prejudicial. The Court GRANTS the EEOC's motion in limine to prohibit mention or evidence of Tammy Williams' performance with or termination by prior or subsequent employers (Docket Entry No. 32)

Here, Chuck Thompson's performance at MidAmerican Energy Company is not relevant, as Deere never pled as an affirmative defense, the after acquired evidence rule. It has not disclosed any witness which has stated that Deere would have terminated plaintiff anyway, if it knew about his performance at his previous employment. Because it has not, this court should bar such evidence.

### FACT THAT PLAINTIFF APPLIED FOR UNEMPLOYMENT COMPENSATION AND/OR THE FACT THAT IT WAS DENIED

In support of plaintiff's Motion *in limine* paragraph 14, which asks this court to bar any reference to the fact that plaintiff applied for unemployment compensation and/or the fact that it was denied as irrelevant under Rules of Evidence 401 and 402, or, alternatively, it is unfairly prejudicial under Rule 403, see Flick v. Aurora Equip. Co., 2004 U.S. Dist. LEXIS 4304, 11-12 (E.D. Pa. Jan. 15, 2004):

> The decision to admit evidence of administrative decisions in federal anti-discrimination suits is committed to the sound discretion of the trial court. Walton v. Eaton Corp., 563 F.2d 66, 75 (3d Cir. 1977). With respect to evidence relating to Plaintiff's unemployment compensation hearing, we conclude that the danger that a jury

would give undue weight to that evidence substantially outweighs its probative value, and it therefore may not be admitted. See FED. R. EVID. 403.

Likewise in this case, it was not an issue in the unemployment compensation hearing as to whether plaintiff was disciplined more harshly than similarly situated Caucasian employees. To allow evidence of the denial of unemployment benefits will not assist the trier of fact in determining whether race discrimination occurred, and would endanger having the jury give undue weight to the evidence that substantially outweighs its protective value.

Respectfully submitted,

CHARLES B. THOMPSON,

By: /s/Stephen T. Fieweger

For:
KATZ, HUNTOON & FIEWEGER, P.C.
Attorneys for Plaintiff
1000 - 36th Avenue
Moline, IL 61265-7126
Telephone: 309-797-3000
Fax: 309-797-2167
Email: sfieweger@katzlawfirm.com

### CERTIFICATE OF SERVICE

I hereby certify on March 25, 2013, I electronically filed Plaintiff's Memorandum of Law in Support of Plaintiff's Motion *in limine* with the Clerk of the Court using the CM/ECF System which will send notification of this filing to the following:

Jeffrey D. Martens
jmartens@bnpn.com
William Rector
wrector@bnpn.com

By: /s/Stephen T. Fieweger

s:\wp\worddoc\15845001.36MemorandumSupportLimine